WALTER I. COOK

*v.*

THOMAS J. McCAHILL et ux. et al.

C. confessed a judgment to W. for $3,650, and W., on entering the judgment thereon, made the usual affidavit, stating, among other things, that that amount had been lent by him to C., and that it was justly and honestly due from C. to him. The judgment was afterwards sold by W. to defendant, who required C. to make an affidavit that the judgment was a good and valid one, and that he had no offset against it, nor any grounds upon which to base an action to vacate it or to set it aside.—*Held,* that both C. and W. were estopped, by their affidavits, from showing that the judgment was usurious.

Bill for discovery and relief. On final hearing on pleadings and proofs.

*Mr. W. M. Lanning,* for complainant.

*Mr. Thomas N. McCarter,* for McCahill and wife.

THE CHANCELLOR.

The bill in this case is filed under the fourth section of the "act against usury" (*Rev. p. 519*), which provides that any borrower of money, wares, merchandise, goods or chattels, may exhibit a bill in chancery against the lender, to compel him or her to discover, upon oath or affirmation, the money or wares, merchandise, goods or chattels really lent, and all agreements, devices, shifts, bargains, contracts and conveyances which shall have passed between them relative to such loan or the repayment thereof, and the interest or consideration for the same; and that if thereupon it shall appear that more than lawful interest was taken or reserved, the lender shall be obliged to accept the principal money or the wares, merchandise, goods or chattels, or the value thereof, without any interest or other consideration, and to pay costs. The object of this suit is to compel the defendant

Annie L. McCahill, who is the assignee, by assignment from
Charles W. West, of a judgment entered in the Mercer circuit
court, February 10th, 1882, in favor of West, against the com-
plainant, Walter I. Cook, by confession on bond and warrant of
attorney, for $7,310 penalty (the real debt being $3,650) and
$4 costs, to accept in satisfaction thereof the sum of $2,410,
which, it is alleged, is the amount paid by her therefor to Cook,
under an usurious agreement between her husband, Thomas J.
McCahill, and him, for the loan of money by her husband to
him, to be secured thereby. The averments of the bill are, in
substance, that Cook (a resident of Trenton, in this state), being
in great need of money, sought to borrow it from McCahill, who
was a resident of the state of New York, and it was thereupon
agreed between them that McCahill should lend him $2,410,
and for giving day of payment should receive from Cook $1,240,
both sums to be secured to him by Cook's bond for $3,650, with
interest thereon from the date of the bond until the time of pay-
ment; the bond, in order to conceal the usury, to be given to
West and a judgment to be entered thereon in his favor, and he
to assign it to McCahill. There was also to be a policy of insur-
ance upon Cook's life as collateral security. The bill is filed
against McCahill and his wife and the sheriff of Mercer county,
in whose hands there was, at the time of filing the bill, execution
which had been issued upon the judgment. It prays answer
upon oath. McCahill and his wife have answered, fully denying
the material allegations of the bill upon which the claim to relief
rests, and alleging that the transaction in question was the pur-
chase, by Mrs. McCahill, through her husband, of the judgment
from West, for the sum of $3,000, of which $240 were to go to
the New York broker who negotiated the sale, $100 to Bernard
F. McCahill, a lawyer of New York, a brother of Thomas F.
McCahill, for his fees for his services in examining into the
validity of the judgment, and the balance, $2,600, was to go to
West.

The complainant's right to relief depends wholly upon the
character of the transaction. If it was, as the McCahills insist
that it was, a *bona fide* purchase of the judgment from West,

then the complainant has no claim to the relief which he seeks. The effort on his part is to show that in fact the transaction was an usurious loan by McCahill to him.   It is proved that the design of obtaining money by means of the judgment and a policy of insurance upon Cook's life, if it did not originate with Cook, was suggested by him to West, who approved of it.   The policy was necessary, because Cook had then no property except an interest in his father's estate contingent upon his reaching the age of thirty years, and his age at that time, February, 1882, was only twenty-seven years and about four months.   He communicated his plan to West, who was a broker in Trenton, and agreed to give him $150 for his commissions for obtaining the money.   The bond was given to West, and the judgment confessed thereon in his favor.   West appears to have entered into communication on the subject of negotiating the judgment with one Carmichael, who was his correspondent in the city of New York.   Carmichael obtained the services of one Daniels, who applied to McCahill to buy the judgment.   In his application, Daniels showed to McCahill a letter, dated February 4th, 1882, addressed by him to the latter, in which, after stating in a general way the provision of the will of Cook's father (but without giving any names) and the amount of the estate, he says :

"The youngest son is now about twenty-eight years of age.   Now, a party has a confessed judgment and bond against this son for $8,000, securing his note for $4,000, the latter due the day he is thirty years old, and also full-paid life insurance policy on young man's life in first-rate New York life insurance company, paid in advance for three years.   Estate valued at least $250,000 ; want cash $3,000 for above note and security."

He left the letter with McCahill.   The latter declined to purchase the judgment on the ground, he says, that he knew nothing about the laws of New Jersey, and did not know whether a judgment would hold good or not, and two or three days afterwards Daniels brought him a letter from a lawyer in Trenton to assure him.   The letter was addressed to no one.   It is dated January 7th, 1882, more than a month before the time of the application, and purports to speak to the person to whom Cook, at that date, proposed to confess the judgment, upon the validity

Cook *v.* McCahill.

and sufficiency of the security by confessed judgment and insurance policy. It concludes by saying that it seems to the writer that there is no risk in advancing the money if the insurance policy is satisfactory, and that he wishes to be understood as saying that a confessed judgment secured by an insurance policy is good security, in his opinion. After reading that letter, McCahill agreed to buy the judgment, which he then understood from Daniels's statement to be for $8,000, for $4,000, " if everything was satisfactory," and the applicants would pay for the services of a man whom he would send to Trenton to examine into the matter. To this they agreed. He sent his brother, B. F. McCahill, before mentioned, to Trenton, on the 10th of February. He went to West, and by him was introduced to Cook at the office of West's lawyer. He went to the county clerk's and surrogate's offices to search, and he made a requisition for a search in the former office. He returned to New York that night, and the next day, having obtained a check from his brother for the amount of the purchase-money (the judgment proved to be for a smaller amount than had been represented), went to Trenton and closed the matter. Before he would do so he required Cook to make oath that he was a legatee and devisee under his father's will ; that there were no judgments against him except those returned upon the county clerk's certificate of search which he, B. F. McCahill, had obtained ; that there were no mortgages against his interest, share or portion devised and bequeathed to him by the will of his father ; that he had not made, done or committed any act or acts, thing or things, by reason whereof his share or interest under the will could or might be impeached, charged or impaired, except as therein aforesaid, and that the judgment confessed by him in favor of West was a good and valid judgment, and that he had no offset against it, nor any grounds upon which to base an action to vacate it or to set it aside. He also saw the oath of West upon the confession of the judgment, in which he swore that the true consideration of the bond (which was dated February 8th, 1882, and was payable in one day thereafter) was $3,650, money lent and advanced by him to Cook, at his request, on the day of the

Cook v. McCahill.

date of the bond; that that sum of $3,650, and two days' interest thereon, were justly and honestly due and owing from Cook to him, and that the judgment was not confessed to answer any fraudulent intent or purpose, or to protect Cook's property from his other creditors. He was not informed that that affidavit of West was untrue; nor was he informed that the judgment was not what it purported to be—a judgment entered *bona fide,* for an actual indebtedness due from Cook to West.

The scheme adopted to obtain the money desired by Cook undoubtedly was to present to persons seeking investment for their money an opportunity to purchase, at a low price, what purported and was represented to be, and what such persons would believe to be, a valid judgment owned by West. That such was the plan is evident from the fact that, in order to enable him to make the affidavit in the confession of the judgment, West gave to Cook his check for the $3,600, which check, he says it was understood between them, the latter was to retain until the former should " return him the judgment, or the proceeds of its negotiation." And it seems very unlikely that, having taken so much pains to conceal the true character of the transaction, they would have stripped it of the disguise so soon as a person should have been induced to entertain the proposition of purchase. That they did not do so is evidenced by the fact that Cook was required to make the oath before referred to in order to satisfy B. F. McCahill that the judgment was what it purported and was represented to be. It is urged, in behalf of the complainant, that the interest which Cook personally exhibited in the matter of the negotiation and the part which he took in it, must have led B. F. McCahill to the conclusion that the judgment was intended as a mere cover for usury. But not only does it appear, from B. F. McCahill's testimony, that he dealt with West, who claimed to be the owner of the judgment, but he swears that he delivered the check, which he gave for the judgment, to Mr. Buchanan, to whom, he says, West introduced him as his, West's, lawyer in the matter, and who, in return, handed to him the assignment. He swears, also, that he had no information, nor was there anything to excite his suspicion, that

West was not the owner of the judgment, and that it was merely as a cautionary measure that he required Cook to make the affidavit. He says he relied upon Cook's and West's affidavits, and the lawyer's letter before referred to. He examined the judgment and saw West's affidavit. He also swears that he had no doubt of the truth of those affidavits, and that it never came to his knowledge in any way during the negotiation that the judgment was not a *bona fide* one, or that the amount of it was not honestly due from Cook to West, or that it was a device or contrivance to raise money for Cook. And here it may be said that it would seem that the memory of Cook and West, as to the details of the transaction, is not to be implicitly relied upon. Each forgot a very important matter. West forgot that he had made an affidavit in which he swore to the *bona fides* and honesty of the judgment, and to the indebtedness upon which it purported to be based, and Cook that he had sworn that the judgment was good and valid, and that he had no off-set against it, nor any ground on which to vacate it or set it aside.

If the judgment was a valid one, the fact that Cook interested himself in negotiating it is, under the circumstances, of no importance. Cook and West are, by their affidavits, estopped from denying its validity. The case made by the bill is not established. The bill will be dismissed, with costs.